## Case No. 336.

AMORY v. LAWRENCE et al.

[3 Cliff. 523.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1872.

MORTGAGES—WHAT CONSTITUTES—EQUITY—PAROL EVIDENCE—LIMITATIONS—PLEADING.

1. It is the settled rule in the federal courts that oral evidence is admissible to show that a deed absolute on its face was intended as a mortgage.

[See Howland v. Blake, Case No. 6,792; Cadman v. Peter, 12 Fed. 363; Peugh v. Davis, 96 U. S. 332; Dow v. Chamberlin, Case No. 4,037; Bentley v. Phelps, Id. 1,-331; Andrews v. Hyde, Id. 377.]

2. The complainant being indebted in a large sum, conveyed certain real estate to one Otis, upon an agreement with one Appleton, that he should pay the amount due the complainant's creditors, and take a transfer of the property conveyed, and account to the complainant for the balance left of the property after he had paid himself the amount advanced and interest. The trustee was to hold the property as security for the money advanced. *Held:* The conveyance, though absolute on its face, was, under the decisions of the supreme court, a mortgage.

3. After the trustee had been repaid, the rents and profits of the property in the trustee's hands was a debt or liability not under seal, for which the trustee was responsible to the complainant, and as such constituted a good cause of an action of contract or suit in equity.

4. But the claim in this case was barred by the statute of limitations.

5. The construction given to state statutes of limitations, by the courts of the state in

which such statutes are enacted, furnish the rule of decision in the federal courts in cases where they apply.

6. The courts of equity in Massachusetts apply the statute of limitation in suits in equity.

7. The statute of limitations in this case began to apply when the complainant first became aware that the trustee had been repaid for his advances out of the proceeds of the sale or the rents and profits of the real estate conveyed to him, and knew what his rights in the premises were.

8. The claim against the executors of the deceased trustee, for the balance in the hands of the trustee of moneys collected in execution of the trust, beyond the amount advanced and interest, was held to be barred by the statute of limitations, the complainant having known, twelve years before the filing of the bill, that the trustee had been repaid for such advance and interest.

9. Where an absolute deed is intended as a mortgage, a subsequent purchaser with notice, stands in the place of the equitable mortgagee.

10. Six years is no bar to redeem a mortgage, nor is the plea of laches any defence to the suit, unless they are shown to have extended to the period of twenty years.

11. Courts of equity, in the case of a mortgagor coming to redeem, have fixed upon the term of twenty years after forfeiture and possession taken by the mortgagee, no interest having been paid in the meantime, and with no circumstances accounting for the neglect, as a period beyond which the right of redemption shall not be favored.

[See Slicer v. Bank of Pittsburg, 16 How. (57 U. S.) 571; Cromwell v. Bank of Pittsburg, Case No. 3,409; Dexter v. Arnold, Id. 3,857.]

12. Lapse of twenty years without any recognition of the complainant's rights to redeem the mortgaged premises, consisting of the undivided seventh part of the dower estate of the complainant's mother, and which the trustee in his lifetime conveyed to the last named respondent, was not shown in this case.

13. In this case, the property covered by the complainant's claim against the trustee (which claim the complainant purchased from the assignees in bankruptcy) was property not taken possession of by the assignee, to which the title of the bankrupt is good against all the world, except the assignee or any one to whom he might convey.

14. An assignee in bankruptcy is not bound to take property which may be onerous to the estate, or burden instead of benefit it. If he does not take it, it remains in the bankrupt.

[Cited in Kimberling v. Hartly, 1 Fed. 575; Garrett v. Sayles, Id. 377; American File Co. v. Garrett, 110 U. S. 289, 4 Sup. Ct. 94; Taylor v. Irwin, 20 Fed. 620; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 801.]

15. After the lapse of years, in this case, the court held that the conclusion must be that the assignee elected not to take possession of certain property of which the complainant when a bankrupt took an assignment as set forth in the bill.

16. Reasonable presumptions are admitted by a demurrer, as well as matters expressly alleged.

17. The allegation in the bill was sufficient, although it did not state that the assignment of the claim against the trustee was under an order of court first made, because the presumption is that such sale was made in conformity to such an order, and because, independently of the assignment, the bankrupt's title was

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

good against all the world if the assignee elected not to take the property as not beneficial to the estate.

18. Waiver by the bill of oath in the answer, amounts to nothing unless accepted by the respondents.

In equity. Bill in equity praying for an account from the executors of William Appleton of certain real and personal estate conveyed by the complainant to said William Appleton during his life, and of the receipts derived therefrom, either from its sale or as income, and that said executors might be decreed to pay to the complainant all such sums as might be found due him on such accounting. The bill also prayed that one of the respondents, Thomas C. Amory, might be decreed to account for and pay to the complainant certain rents, profits, and receipts derived from certain real estate alleged to have been conveyed to said Thomas C. Amory by said decedent, William Appleton, and to reconvey said real estate to complainant. The complainant being indebted in the sum of $10,000 to Isaac Coffin, on July 26, 1831, conveyed to William F. Otis certain real and personal property, including his reversionary interest in the dower set off to his mother in his father's estate. That conveyance was made upon an agreement with William Appleton, deceased, that he should pay the amount due to his creditor, and take a transfer of the property conveyed, and account to the complainant for the balance left of the property after he had repaid himself the amount advanced for the transfer and interest. In 1832 the complainant with his family removed to New York and remained there until 1842, when he returned to Massachusetts. In 1840, while residing in New York, he failed in business and in the following year went into bankruptcy and obtained a certificate of discharge in 1853. Until the year 1860 he was ignorant whether the decedent Appleton had been paid or not, what he had advanced on the complainant's account, but he believed as early as 1847 that he had been paid the full amount. The complainant's mother died in 1847, and one seventh of the estate held by her as dower reverted to the decedent. The complainant's confidence in the decedent, Appleton, remained undiminished, as he did not know the amount he had realized from the personal estate, nor what disposition he had made of his share of his father's real estate; but when he became convinced that Appleton intended to retain his, the complainant's share, in the dower estate, his confidence was much shaken, and he then requested the decedent to render his account of his receipts from the property so conveyed by the complainant. They had before that time frequently spoken of the trust property, and Appleton had never intimated that he did not intend to account for the proceeds, and when he requested the account, the decedent recognized his right, but would not agree definitely to make the account. Appleton told the complainant that it would be impossible to tell what the receipts would be until his share in his father's estate was all sold, and intimated that the property would not sell for more than enough to pay him, the decedent.

Repeated requests were made for the account, but the requests were always refused, the decedent asserting that he had not been paid the amount advanced. After his failure, the complainant was in reduced circumstances, and dependent upon his friends for a considerable portion of the income necessary for his and his family's support. Small amounts were paid by the decedent prior to 1850, and at that time in consequence of complainant's demands for an account, the decedent agreed to pay the complainant $600 per annum, which has ever since been paid.

In 1860 he was enabled to have an examination made of the accounts, and being advised to purchase from his assignees in bankruptcy his claim against the decedent, he "accordingly procured an assignment" of the same, and he then ascertained the accounts to be as set forth in the bill of complaint, which showed that he was justly entitled to a large balance beyond the amount advanced and interest. In 1832 the decedent paid the complainant $5,000, in 1842 $400, in 1856 $1,600, in 1858 $600, annually as agreed, making an amount not exceeding $10,000. The income derived from the property held in trust, must have been at least $20,000, and the net receipts of the decedent beyond his advances, at least $5,000 up to 1862, when the account closed, as stated in the bill. The complainant caused a statement of the whole matter to be made, and sent to those most interested in his welfare, hoping that publicity would force the decedent, then alive, to do him justice, but his friends being opposed to his cause, refused him any aid, without which it was impossible for him to proceed to suit. On the 27th of January, 1862, the decedent conveyed one seventh of certain real estate to complainant's brother, Thomas C. Amory, which estate was worth at least $15,000, and at the time of the conveyance the grantee had full knowledge that the grantor held the same as trustee for the complainant, and that the complainant was doing all in his power to recover it.

In 1862 the trustee, William Appleton, died, and before his death caused the complainant, through Thomas C. Amory, to be informed that he had left with his executors a file of papers relating to his rights of property conveyed to the decedent, and that his executors had directions to see that his, complainant's, rights were acknowledged, and that the property was restored to him. Expressions of regret on the part of the trustee, were also conveyed to the complain-

ant, that justice to him had been delayed until it was impossible for the trustee to settle the matter personally with the complainant.

The complainant called the attention of the executors and devisees to the matter, but they refused to investigate his claim.

Such were the facts as alleged in the bill of complaint. The respondents filed three demurrers to the bill.

The Demurrer of Amos A. Lawrence, Thomas Jefferson Coolidge, William Appleton, and Charles H. Appleton, Certain of the Defendants Named in Said Bill, as They Are the Executors of the Will of William Appleton, Deceased.

These defendants, by protestation not confessing or acknowledging all or any of the matter and things in the said complainant's bill contained, to be true in manner and form, as the same are therein and thereby set forth and alleged, do demur to the said bill, and for causes of demurrer show—First. That the complainant hath not in and by his said bill, made or stated such a case as entitles him in a court of equity to any discovery from these defendants, or relief against them as to the matters contained in said bill or any of them. Second. That the complainant, in and by his said bill, in violation of law and the rules of this court, deprives the defendants of their right of answering under oath. Wherefore, and for divers other good causes of demurrer appearing in the said bill, the said defendants do demur thereto, and pray the judgment of this honorable court, whether they shall be compelled to make any further answer to said bill, and humbly pray to be hence dismissed.

The Demurrer of William Appleton, Charles H. Appleton, S. E. Appleton, Hetty S. Coolidge, Certain of the Defendants Named in Said Bill, as They Are Devisees and Legatees under the Will of Said William Appleton, Deceased.

These defendants by protestation not confessing or acknowledging all or any of the things in the complainant's bill contained, to be true in manner and form, as the same are therein set forth and alleged, do demur to said bill, and for cause of demurrer show— First. That the complainant hath not, in and by his said bill, made or stated such a case as entitles him in a court of equity to any discovery from these defendants, or relief against them as to the matters contained in said bill or any of them. Second. That the complainant, in and by his said bill, in violation of law and the rules of this court, deprives the defendants of their right of answering under oath. That it appears, in and by said bill, that it is exhibited against certain persons as executors of the will of William Appleton, deceased, and against these defendants as devisees and legatees under said will, and these defendants, as such devisees and

legatees, are improperly joined as parties defendant to said bill. Wherefore, and for divers other good causes of demurrer appearing in the said bill, the said defendants do demur thereto, and pray the judgment, of this honorable court, whether they shall be compelled to make any further answer to said bill, and humbly pray to be hence dismissed with their reasonable costs in this behalf sustained.

The Demurrer of Thomas C. Amory, One of the Defendants Named in Said Bill.

This defendant, by protestation not confessing or acknowledging all or any of the matters and things in the said complainant's bill contained to be true in manner and form, as the same are therein and thereby set forth and alleged, doth demur to said bill and for causes of demurrer showeth— First. That the complainant hath not in and by his said bill made or stated such a case as entitles him in a court of equity to any discovery from this defendant or relief against him as to the matters contained in said bill or any of them. Second. That the complainant in and by his said bill, in violation of law and the rules of this court, deprives the defendant of his right of answering under oath. Wherefore, and for divers other good causes of demurrer appearing in said bill, this defendant doth demur thereto, and prays the judgment of this honorable court, whether he shall be compelled to make any further answer to said bill, and humbly prays to be hence dismissed with his reasonable costs in this behalf sustained. [Bill dismissed as to executors and devisees, but for complainant as against Thomas C. Amory.]

B. F. Butler and Bumpus & Johnson, for complainant.

Sidney Bartlett and C. A. Welch, for respondents.

CLIFFORD, Circuit Justice. Admitted as the matters well pleaded in the bill of complaint are by the demurrers, the only question is as to their legal effect. Several objections are taken to the right of the complainant to a decree, which will be briefly considered in the following order. That the claim is within the statute of frauds, as the trust was not created or declared by an instrument in writing, signed by the party creating or declaring the same, as it is settled law in this state, that no trust can be created or declared except by such an instrument. That the claim is barred by the statute of limitations, which enacts that all actions of contract, founded upon any contract or liability not under seal, express or implied, with certain exceptions not material to be noticed, shall be commenced within six years next after the cause of action accrues and not afterwards. Gen. St. Mass. 777. That if the claim is not barred by the statute of limitations, still, it is barred by the laches of

the complainant, and those through whom he claims. That the bill of complaint fails to show that the complainant is entitled to any relief, because it is not alleged that he acquired a good title from his assignees in bankruptcy. That the cause of action is barred by the two years' limitation in the bankrupt act, under which the certificate of discharge was obtained. That the bill of complaint is demurrable, because the complainant attempted to deprive the respondents of their right to answer under oath contrary to the rules and practice of the court existing at the time of filing the bill.

Much discussion of the first question is unnecessary, as it depends at this day entirely upon authority. Undoubtedly the objection would prevail before the supreme court of the state, but the rule in equity is different in the federal courts, as appears by numerous decided cases. Whether oral evidence is admissible for the purpose of showing that a deed, absolute on its face, was intended as a mortgage, was directly presented in the case of Wyman v. Babcock, [Case No. 18,113,] and the decision of the court was that such evidence is admissible for that purpose; and that the statute of frauds is no bar to the admission of the evidence where it is offered to show that such a deed was intended as a mortgage. Twenty years earlier Judge Story decided the question the same way in the case of Taylor v. Luther, [Case No. 13,796;] holding that there is nothing in the statute of frauds rendering parol evidence inadmissible to show that an absolute deed was intended as a mortgage, and that the defeasance had been omitted or destroyed by fraud or mistake, or omitted by design upon mutual confidence between the parties. He examined the question upon principle and authority, and gave his reasons for the conclusion, and ten years later in the case of Jenkins v. Eldredge, [Case No. 7,267,] he reaffirmed the same position after giving the question a very elaborate consideration. Repeated decisions of the supreme court have affirmed the same rule, and it may now be regarded as settled in all the federal courts. Conway v. Alexander, 7 Cranch, [11 U. S.] 238; Sprigg v. Mt. Pleasant Bank, 14 Pet. [39 U. S.] 201; Morris v. Nixon, 1 How. [42 U. S.] 126; Russell v. Southard, 12 How. [53 U. S.] 139; Babcock v. Wyman, 19 How. [60 U. S.] 299.

Two questions are involved in the second proposition of the defence which, inasmuch as separate demurrers are filed, must be separately considered. 1. Whether the claim of the complainant against the executors of the trustee, for the income and receipts from the sale of the trust property in the lifetime of the trustee, other than the undivided parcel conveyed to the last-named respondent, is or is not barred as assumed by the executors, in their demurrer. 2. Whether the right to redeem the undivided seventh part of the property conveyed by the trustee to the last-named respondent is not also barred by lapse of time, as assumed by that respondent. Before examining those questions, however, it becomes necessary to ascertain more definitely what was the real nature of the original transaction, and for that purpose reference need only be made to the bill of complaint, as all the well-pleaded allegations of the same are admitted by the several demurrers. Schedules of the property, as the complainant alleges, were prepared under the direction of the trustee, it being agreed that he, the complainant, should not part with any of his property until the trustee had made the arrangement to pay the $10,000 to the complainant's creditor, that he made the transfer of his entire property as agreed, it being clearly and distinctly understood between him and the trustee, that the latter was to hold the property simply as security for the $10,000 to be advanced by the trustee, and that he, the trustee, was to account for the balance as soon as he should be repaid the amount advanced, with interest. Payment was accordingly made to the creditor, the property conveyed to the person designated, and ultimately transferred to the trustee, and the whole transaction perfected as agreed between the complainant and the trustee. Viewed in the light of the decisions of the federal courts, the conveyance beyond all doubt, though absolute on its face, was a mortgage. Wyman v. Babcock, [Case No. 18,113;] Babcock v. Wyman. 19 How. [60 U. S.] 299.

Assume the allegations of both to be correct, and it appears that the trustee was fully paid prior to 1860, and the complainant admits that in that year it came to his knowledge not only that the trustee was fully paid, but that he had in his hands a large balance derived from receipts for the property sold, and the rents and profits of the property which was due to the complainant. Whatever that balance was beyond the sum advanced and interest was a debt or liability not under seal, for which the trustee was responsible to the complainant, and as such constituted a good cause for an action of contract or a suit in equity. Wyman v. Babcock, [Case No. 18,113;] same case, 19 How. [60 U. S.] 300. Such actions are barred by the six years' limitation, and the court is of the opinion that the claim against the executors is barred by that limitation. Gen. St. Mass. 777. State statutes of limitation and the construction of the same as given by the courts of the state furnish the rule of decision in the federal courts in cases where they apply. Leffingwell v. Warren, 2 Black, [67 U. S.] 599. Courts of equity in this state apply the statute of limitations in such cases in suits in equity to the same effect as they are applied in actions at law. Farnam v. Brooks, 9 Pick. 212; Dodge v. Essex Ins. Co., 12 Gray, 71. Rights concealed by the trustee are not subject to such a rule of limitation; but it appears that the complainant knew what his rights were in that regard, twelve years be-

fore the bill was filed, as well as he knew what they were when the bill was framed, and it is clear that the statute commenced to run, so far as respects the balance in the hands of the trustee, arising from the sale of the property, or from the rents and profits collected beyond the amount advanced, and interest, when the party seeking relief became fully acquainted with the facts, and knew what his rights were in the premises. Perry, Trusts, § 230; Pritchard v. Chandler, [Case No. 11,436;] Ang. Lim. (2d Ed.) 176; Kane v. Bloodgood, 7 Johns. Ch. 90; Hallett v. Collins, 10 How. [51 U. S.] 174; Boone v. Chiles, 10 Pet. [35 U. S.] 177; Finney v. Cochran, 1 Watts & S. 118. Governed by these considerations, the court is of the opinion that the claim against the executors for the balance in the hands of the trustee for moneys collected in execution of the trust beyond the amount advanced, and interest, is barred by the statute of limitations, and having come to that conclusion, it follows that the claim against the devisees of the decedent trustee is without any foundation. Attempt is made to show that the limitation of six years should not be applied in this case, as the trustee died in 1862, but that suggestion cannot relieve the complainant from the bar, as the case is controlled by section 10 of the state limitation act, which in that state of the case only extends the time for bringing the action for the period of two years next after the grant of letters testamentary or of administration. Gen. St. Mass. 778. Suggestion is also made that the bill may be sustained against the executors as a mere naked bill of discovery; but the court is of a different opinion, for two reasons. 1. Because the executors in the further prosecution of the bill against the other respondent of the decree, or for the complainant, are competent witnesses for either party. 2. Because the complainant has been guilty of laches in bringing his bill which may well be taken into the account in determining that question.

Besides the money demand against the executors and devisees of the trustee, the complainant also claims to redeem the mortgaged premises so far as respects the undivided seventh part of the dower estate which the trustee in his lifetime conveyed to the last-named respondent. Evidently that claim rests upon entirely different principles from the money demand against the other respondents, as the property exists in specie without change, and is held by the grantee of the trustee who made the purchase, and took the conveyance of the property with full knowledge of the trust and of the rights of the complainant under the original arrangement whereby the title of his grantor was acquired. Where an absolute deed is intended as a mortgage, a subsequent purchaser with notice stands in the place of the equitable mortgagee. Williams v. Thorn, 11 Paige, 459; Vattier v. Hinde, 7 Pet. [32 U. S.]253; Everett v. Stone, [Case No. 4,577.]

Six years is no bar to a claim to redeem a mortgage, nor is the plea of laches any defence to the suit unless it is shown to have extended to a period of twenty years. In the case of a mortgagor coming to redeem, courts of equity have by analogy to the statute of limitations, which takes away the right of entry of the plaintiff after twenty years' adverse possession, fixed upon that term as the period after forfeiture and possession taken by the mortgagee, no interest having been paid in the mean time, and no circumstances to account for the neglect appearing, beyond which a right of redemption shall not be favored. Hughes v. Edwards, 9 Wheat. [22 U. S.] 497; Wyman v. Babcock, [Case No. 18,113;] Dexter v. Arnold, [Id. 3,859;] Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 168; 4 Kent, Comm. (11th Ed.) 187; Demarest v. Wynkoop, 3 Johns. Ch. 129. Twenty years without a recognition of the rights of the complainant is not shown in this case. Numerous allegations of the bill contradict any such theory, and show that such a defence in the present state of the pleadings cannot be sustained, as the bill alleges that in 1847 the trustee constantly recognized the rights of the complainant, and told him in substance that it was impossible to say what the receipts would be until his share in his father's estate was all sold, that he also recognized his right to an account, but would not agree definitely to give it, intimating that the property would not amount to more than enough to pay him what he advanced; that in 1850 he agreed to pay him $600 annually, which has ever since been paid; that in 1856 he paid $1,600, and $600 in 1858, which must be understood as a sum in addition to annual payment under the prior agreement. Examined in the light of the declarations of the trustee and these several payments, especially the payment at one time of the sum of $1,600, it is impossible to adopt the theory that the rights of the complainant were not recognized by the trustee within the period covered by those several allegations. Sixteen years only have elapsed since the large payment of $1,600 was made by the trustee.

Sufficient has already been remarked in disposing of the second objection of the respondent to show that the third objection cannot be sustained, and it is accordingly overruled.

Objection is also made that the allegations of the bill are not sufficient to show that the complainant acquired a good title to the property from his assignees in bankruptcy. All the bill alleges upon the subject is that he was advised to purchase from his assignees in bankruptcy his claim against the trustee, and that he accordingly procured an assignment. Express provision was made by section 9 of the bankrupt act of the 19th of August, 1841, that all sales, transfers, and other conveyances of the assignee of the bankrupt's property and rights of property

shall be made at such times and in such manner as shall be ordered and appointed by the court in bankruptcy, and the supreme court of Massachusetts decided in the case of Osborn v. Basterral, 4 Cush. 406, that the sale of a bankrupt's real estate under an order of the district court in which no time or place of sale was fixed by the court, is irregular and void. In general, when a sale is made under a statute power, said Shaw, Ch. J., it must appear that the requisition of the statute as conditions precedent to the operation of the power to pass the estate, have been complied with. When the title to real estate is solely through a power, it must, in order to be sustainable, be proved that such power was duly executed. Cleveland v. Boerum, 27 Barb. 254. Title was claimed it will be seen in both of those cases under purchases by strangers to the proceedings in bankruptcy, and consequently their claim of title rested solely upon the assumption that the power to sell was duly executed by the assignee. Unlike what occurred in those cases, the purchase in the case before the court was made by the bankrupt, whose title, in the case of onerous property, where the assignee elects not to take it into possession, is good against all the world, except the assignee or some one to whom he conveyed the property. Smith v. Gordon, [Case No. 13,052.] All the property and rights of property belonging to the bankrupt, unquestionably pass by force of the decree of bankruptcy to the assignee by operation of law, and become vested in him as soon as he is appointed. But though the legal title passes to the assignee, he is not bound, said Judge Ware, to take possession of all the property. Leasehold estates pass to the assignee under the English bankrupt laws, but the assignee is not bound to take the lease and charge the estate with the payment of the rent, as the rent may be greater than the value of the lease, and thus the estate may be burdened instead of being benefited, and in such a case the claim may be abandoned by the assignee. He is not bound in such a case to take the property into his possession, and if he elects not to take the property, it remains in the bankrupt, and no one certainly, except the assignee, has a right to dispute his possession. Copeland v. Stephens, 1 Barn. & Ald. 603; Fowler v. Down, 1 Bos. & P. 44.

Years have elapsed since the proceedings in bankruptcy were closed, and the irresistible conclusion from all the averments of the bill is, that the assignee never elected to take possession of this property, or made any claim whatever upon the trustee for the same. Assignees may refuse to take possession of onerous properties or such as will be a burden instead of a profit, and the clear presumption from the bill as admitted by the demurrer is that the claim against the trustee was regarded in that light by the assignee. Robeson says it has long been a recognized principle of the bankrupt law that the assignees of a bankrupt are not bound to take property of an onerous or unprofitable character, or property which will be a burden instead of a benefit. They are on that subject regarded as being in a very different position from that of the executors of a deceased testator, as the former take the property by operation of law, while the latter claim title through their testator, and are bound to perform his obligations to the extent of his assets. Robs. Bankr. 322. Where the assignee elects not to take the right of the bankrupt and charge the estate with the burden of an uncertain litigation, the right, whatever it is, survives in the bankrupt, and some of the authorities hold that it may be pursued by any creditor not a party to the proceedings in bankruptcy. Smith v. Gordon, [Case No. 13,052.] Persons acting as assignees in such a case are required to elect, within a reasonable time, and the rule is that if they refuse to elect when required to do so, it is deemed an election to reject the estate. Lawrence v. Knowles, 5 Bing. N. C. 399; Carter v. Warne, 4 Car. & P. 191; Graham v. Van Diemen's Land Co., 11 Exch. 101; Ex parte Blandy, 1 Deac. 286; Tuck v. Fyson, 6 Bing. 321. Doubtless the complainant, in such a case, must allege or prove enough to show that the assignee is estopped to set up any right in opposition to his claim, and the court is of the opinion that enough is alleged in this case to satisfy that requirement. Reasonable presumptions are admitted by the demurrer as well as the matters expressly alleged. Pursuant to advice which the complainant received to purchase from his assignees his claim against the trustee, the allegation is that he procured an assignment of the same, which must be understood in this award as a transfer of all the property and estate embraced in the claim which he was advised to purchase by an appropriate legal instrument. Suppose that is so, still the argument is that the allegation is not sufficient, because it is not alleged that the sale was made by the order of the bankrupt court; but the opinion of the court is that such a prior order was not necessary under the circumstances of this case, to give validity to the sale, or if it was, that the reasonable presumption from the allegation of the bill is, that the assignment was made in pursuance of such an order of court. Independent of the assignment, his title, under the circumstances of that case, was good against all the world except the assignee, as the presumption is that the property was regarded as onerous, and that the assignee elected not to take it into possession or to prosecute the claim.

The next objection is that the cause of action is barred by the two years' limitation in the bankrupt law under which the complainant was adjudged a bankrupt. Suffice to say that the limitation does not apply to the

case of an assignee, which is all that need be said upon the subject in the present case. Banks v. Ogden, 2 Wall. [69 U. S.] 69.

It is also objected that the complainant attempted to deprive the respondents of their right to an answer under oath; but the controlling answer to the objection is, that it can have no such effect, as the waiver amounts to nothing unless the respondents accept it. Heath v. Erie Ry. Co., [Case No. 6,306;] Story, Eq. Pl. § 874. Bill dismissed as to the executors and devisees. Decree for complainant against Thomas C. Amory.