## No. 10,729.

## VANSLYKE v. SHRYER.

BANKRUPTCY.—*Suit to Set Aside Sheriff's Sale.*—*Parties.*—Where one has been adjudged a bankrupt and discharged, and it does not appear that there was a surplus of estate, he can not maintain a suit to set aside a sale of his lands by a sheriff made prior to the adjudication in bankruptcy.

SAME.—An adjudication in bankruptcy vests the whole of the estate of the bankrupt in the assignee, and the bankrupt has no longer any interest therein, unless after paying debts a surplus remains.

From the Greene Circuit Court.

*E. E. Rose* and *E. Short*, for appellant.

*A. G. Cavins* and *E. H. C. Cavins*, for appellee.

BLACK, C.—The appellant, in August, 1881, brought his action against the appellee, to set aside three sheriff's sales of real estate, at each of which the appellee, a plaintiff in each of the judgments under which the sales were made, was the purchaser.

The complaint was in three paragraphs. There was an answer in two paragraphs, the first being a general denial. A demurrer to the second was overruled, and the plaintiff replied in two paragraphs. The cause was tried by the court, the finding being in favor of the defendant. A motion for a new trial made by the plaintiff was overruled, the causes assigned therein being that the decision of the court was contrary to law, and that it was not sustained by sufficient evidence. Thereupon judgment was rendered for the defendant.

The appellant has assigned as errors the overruling of his demurrer and the overruling of his motion for a new trial.

The first sale was made on the 4th of November, 1876, on execution under a judgment for $4,215 and costs, rendered in the court below, on the 15th of June, 1876, in favor of the appellee and others against the appellant and others. This sale was for the sum of $4,280.78. Among the lands sold as the property of the appellant was a tract in Greene county,

described as the north half of the southwest quarter, and the north half of the southeast quarter, of section 22, township 7 north, of range 5 west, except about fourteen acres conveyed to certain persons named. The land sold not having been redeemed, the appellee, on the 7th of November, 1877, received the sheriff's deed and went into possession. The objection made to this sale in the first paragraph of the complaint was, that in the sheriff's advertisement of the sale the land was described as being in range 7 west.

In the second paragraph of the complaint it was alleged that said judgment was obtained without process as against the appellant; also, that the record of the sheriff's return was changed as to the real estate above described by erasing the word "seven" and the figure "7" and inserting instead thereof the word five and the figure 5; and that said real estate above described was not levied upon, or advertised or sold, but was conveyed by mistake caused by said change in the record.

In the third paragraph of the complaint it was alleged that said judgment was recovered without process being issued for the appellant or appearance by him; that in the sheriff's advertisement of the sale the land above described was described as being in range 7 west; that the purchaser knew, at the time of the sale, that this portion of the lands had not been advertised for sale; but that the sheriff in his return, after reciting his levy upon the lands, correctly describing them, recited that "after giving due and legal notice of the time and place of sale of the above described real estate," he sold the same.

The second sale was made on an order of sale issued under a judgment rendered on the 25th of October, 1876, in favor of the appellee and others against the appellant and others, in a suit wherein a mortgage executed by the appellant upon his real estate was foreclosed, said real estate including that above described. This sale was made for $1,192.34. It was alleged of this sale, that the land sold not having been re-

deemed, the appellee, on the 20th of November, 1877, re-
ceived the sheriff's deed and went into possession of the
lands.   The objections urged against this sale were, that the
order of sale having been issued and placed in the hands of
the sheriff on the 31st of October, 1876, the sale was adver-
tised for and made on the 18th of November, 1876; also,
that the order of sale was for $547.60, when the judgment
was for $527.64 in gold coin, or $567.60 in currency; also,
that there were certain mistakes in the descriptions of lands
in the sheriff's advertisement.

The third sale also was made under an order of sale issued
under a judgment of foreclosure of a mortgage on real estate
of the appellant, including that above described, rendered on
the 13th of June, 1877.   The amount for which the mort-
gaged premises sold was $568.   It was alleged that the mort-
gage was not executed or assigned to the plaintiffs in this
judgment; that the mortgaged premises, at the time of the
sale, were worth, and they still were worth, $12,000, and that
the bid therefor was grossly inadequate; that the judgment
of foreclosure was taken for $100 over what was due on one
of the notes secured by the mortgage, and for $14.15 more
than was claimed in the complaint, and that the judgment
was taken by default; also, that one of the notes on which
the judgment of foreclosure was based had been merged in a
judgment taken thereon without foreclosure, on the 28th of
March, 1877.   It was alleged that under this sale a certificate
of purchase was given by the sheriff to the appellee; but it
was not alleged that a deed had been executed.

The plaintiff's prayer for relief was confined to the real
estate above described in said section 22.

In the second paragraph of answer it was shown that said
judgments were all rendered in favor of a certain firm en-
gaged in, the business of banking, and that the actions in
which they were rendered were prosecuted by the persons who
at the time were the members of said firm.   It was alleged,
amongst other things, that the appellant knew that the land

above described in said section 22 was sold on said first sale, and that he had executions issued on the judgment under which the sale was made, for his benefit, and had property sold thereunder and collected a part of said judgment from some of his co-defendants by execution, and one-half of the residue from one of his co-defendants in said judgment; that after the appellee received his deed under said second sale, the appellant recognized said second sale and sanctioned it by surrendering possession and by collecting a portion of the judgment from one of his co-defendants, and by setting up a claim for, and collecting, another portion from another co-defendant.

It was alleged that there having been no redemption from said third sale during the year for redemption, a deed was executed by the sheriff to the appellee; that when said lands were so sold there were prior liens against them for more than their value. And it was alleged that after all of said sales were made, the appellant agreed with the appellee to re-purchase the real estate sold for the cost thereof, and said agreement was held open, and it was expected that it would be consummated, until in August, 1878, when the appellant gave the appellee notice that he could not make the purchase, and that the appellee need not hold the lands longer for the appellant, but might proceed to sell them to other persons; that afterward the appellee sold and conveyed the land above described to a person named who had taken possession under said sale, and had made full payment for said property. It was alleged that said lands in section 22, above described, were the only lands of very great value included in any of the sales, and were the lands which the appellee had specially in view in making his purchase.

It was also alleged that on the 31st of August, 1878, the appellant, on his own petition, was adjudged a bankrupt, and thereupon he filed a schedule of all his property held and claimed by him at that date, and his property was assigned

and conveyed to a person named, assignee in bankruptcy of the appellant; that the appellant did not in said schedule or at any time during the pendency of said bankruptcy proceedings, claim any part of the property so sold, but did claim in his said schedule the one-half of said judgments against his co-sureties by virtue of his property having been so sold, except the judgments as to which he had before made such collection; that on or about August 31st, 1878, the appellant swore that said schedule embraced all property in which he had any interest; that said assignee never sold or conveyed to the appellant any part of said lands above described, but the appellant represented to said assignee that said lands belonged to the appellee. And by this paragraph of answer the appellee denied every allegation in the complaint not admitted by said answer.

In the second paragraph of reply it was alleged, in substance, that under the first sale the purchaser acquired good title to a large amount of valuable property, by virtue of which the judgment became and was entered satisfied, and thereby the appellant became entitled to contribution from his co-sureties; that as to said first order of sale and the sale thereunder, the appellant had no knowledge of irregularity therein until after the time for redemption expired, or until after his discharge in bankruptcy, which was in March, 1879; that as to said first foreclosure sale the lands were correctly described in the sheriff's advertisement, except those lying in said section 22, and that, supposing the sale to be regular, he received contribution from part of his co-sureties; that until a short time before the appellant became a bankrupt, the appellee and one East, who was the principal debtor on the notes secured by the mortgage involved in said two foreclosure proceedings, were negotiating for the redemption of the mortgaged property by East for the benefit of the appellant, and in reliance upon the expectation that the appellee would hold the property for redemption by East as agreed upon by the appellant and the appellee at the execution of

the mortgage, and not knowing of the irregularities in said foreclosure sales, the appellant suffered the appellee to assume control of the premises ; that the only negotiation for repurchase between the appellee and the appellant personally had reference to the appellee's deeding a certain part of the premises to the appellant in consideration of his quitclaiming the residue to the appellee ; and that at the time of said attempted settlement the appellant had no knowledge of any vice in said sales or either of them by which he could obtain relief.

The allegations of the complaint concerning the want of jurisdiction of the person of the appellant, and the errors, mistakes and irregularities in the judgments and sales, were covered by the denial with which the second paragraph of the answer concluded, and we need not take space to particularly examine the other allegations of this answer.

The evidence, for the most part written, is very voluminous. Among the items of evidence introduced by the plaintiff, the appellant here, was the complaint in the action in which the judgment was rendered under which the first sale was made, being a complaint of the appellee and others against Hughes East, Thomas F. Ryan, Daniel B. Hatfield and Henry Vanslyke, the appellant, with an endorsement thereon showing the filing of said complaint on the 31st of May, 1876, and an endorsement as follows : " We waive the issue and service of process in the foregoing action, and enter an appearance herein, May 30th, 1876. (Signed) Dan B. Hatfield.

"Henry Vanslyke."

The appellant also introduced a summons issued in said action for said East and Ryan, with a return showing service thereof upon them. He also introduced an order-book entry in said cause, showing the appearance of the plaintiffs by their attorneys, and that they proved to the court that " said defendants have each been duly served with process herein more than ten days before the first day of the present term of this court," and showing the default of all said defendants except said Hatfield, and that he appeared by his attorneys.

By an act which became in force March 2d, 1877 (Acts 1877, Reg. Sess., p. 93), it was enacted that judgments theretofore rendered in good faith in cases where the service of process was attempted to be waived by written agreement not endorsed on the summons, and without formal service of summons, should be deemed legal and valid in all respects, the same as if summons had been duly issued and served; and all sales that had been made by sheriffs on such defective judgments, in good faith, were confirmed and legalized, and all conveyances made pursuant to such sales were legalized. This statute contained a proviso that nothing therein should prevent any judgment defendant, his heirs or legal representatives, from prosecuting any proceeding theretofore instituted, or from instituting, within six months after the taking effect of the statute, any proceeding to set aside such judgment or sale, when he had a meritorious defence to the action or some part thereof. This statute has been held by this court to be a constitutional and valid law. *Muncie Nat'l Bank* v. *Miller,* 91 Ind. 441.

The appellant was a witness on the trial, but neither he nor any other witness gave any testimony upon the subject of the jurisdiction of the court over his person in said action which resulted in the judgment under which the first sale was made. There being no evidence implying any bad faith, it must be said that, without considering the effect of said order-book entry, the appellant by his own evidence showed that he had no reason for attacking the first sale on the ground that the court, in the rendition of the judgment under which it was made, had no jurisdiction of his person. The proof was such as to eliminate the question as to what would have been the proper effect in the case now to be decided of such a want of jurisdiction.

We will not take space to show the state of the evidence in relation to other errors and irregularities stated in the complaint. If the appellant, after his long delay and acquiescence, could avail himself of such grounds for the pur-

pose of setting aside any or all of said sales, we think that the evidence in relation to his bankruptcy would preclude his recovery.

On the 31st of August, 1878, the appellant filed, in the district court of the United States for the District of Indiana, his petition to be adjudged a bankrupt and his oaths and schedules in bankruptcy, in which schedules he did not include the property here in controversy; and having been duly adjudged a bankrupt, he was, on the 18th of March, 1879, discharged forever from all debts and claims provable against his estate in bankruptcy, which existed at said date of the filing of his said petition, excepting such debts, if any, as were by statute excepted from the operation of a discharge in bankruptcy.

In *Laird* v. *Laird,* 2 Penn. L. J. R. 206, decided in 1844, it was held that a defendant in an execution by virtue of which his real estate had been sold on the 23d of May, 1843, he having been discharged as a bankrupt on the 29th of April, 1843, had no right to make objection to the sheriff's sale and ask that it be set aside. It was said that all reasonable presumption was against there being any surplus for the bankrupt, the decree of bankruptcy being founded on the fact of the defendant's insolvency, and the burden of proof with respect to his interest was necessarily thrown upon him by the exhibition of that decree, and it was for him to show that there could be a surplus.

In *Pardee* v. *Leitch,* 6 Lans. 303, decided in 1872, it was held that the assignee in bankruptcy of a judgment debtor was a proper party to make a motion to set aside a sale under execution issued on the judgment, on the ground that the sale was irregular and void. It was said: " The judgment debtor could have made the motion, but for his discharge in bankruptcy, and his assignee in bankruptcy, who represents not only the judgment debtor but all his creditors, is the only person by whom it can properly be made." See *In Re Burns,* 1 Nat'l Bank. Reg. 174.

In *Blair* v. *Hanna*, 87 Ind. 298, it was held that judgment creditors of a bankrupt could not maintain an action to set aside a conveyance of real estate made to defraud his creditors; that the right to maintain such a suit belonged exclusively to the assignee in bankruptcy.

" The title of the assignee is, for the purposes of the trust, an absolute one. The divestiture of the bankrupt is complete, but upon the termination of the trust the law restores to him so much of the property as remains undisposed of." *Boyd* v. *Olvey*, 82 Ind. 294. See *Redman* v. *Gould*, 7 Blackf. 361. Unless the discharged bankrupt show that he was not in truth insolvent, but that his debts were paid in full through the property surrendered by him in bankruptcy, he has no interest sufficient to support his application to set aside such prior sales. As all his debts are absolutely extinguished, so his interest in property thus sold is gone.

The judgment should be affirmed.

PER CURIAM.—Upon the foregoing opinion, the judgment is affirmed, at the costs of the appellant.

Filed Oct. 31, 1884.