HIRAM WOOD, APPELLANT, v. BENJAMIN M. BAKER
AND ANOTHER, RESPONDENTS.

*Equity — deed given as a mortgage — property rights not asserted by an assignee in bankruptcy remain in the bankrupt — no reconveyance necessary — action to redeem — statute of limitations — new trial.*

In an action brought to have a certain deed declared a mortgage, and for a redemption of the premises described therein from the mortgage, it appeared that the plaintiff, after executing the deed to one Baker, the defendant, in 1872, as a security for loans, in form took a lease of the premises from him, by an instrument which gave to the plaintiff the privilege of purchasing the premises at the price of $12,000, which sum had been loaned by Baker to the plaintiff, but subsequently, and in 1874, he surrendered possession to Baker; that soon afterwards bankruptcy proceedings were instituted against the plaintiff, an assignee was appointed, the usual proceedings taken, and in May, 1875, both the plaintiff (the bankrupt) and his assignee were duly discharged.

The assignee never made any claim in regard to the premises:

*Held,* that the assignee having failed, through accident, mistake or design, to enforce said claim as an asset of the bankrupt's estate, and distribute it according to law, and there being no proof of fraudulent concealment on the part of the bankrupt, said claim, and all right of action thereunder, remained, where they existed originally, in the plaintiff.

That no reconveyance of said right of action was required to be made by the assignee in order to clothe the plaintiff with any rights therein which the bankruptcy court had refused or failed to receive as assets.

That an action to redeem, brought within twenty years from the execution of the deed, was not barred by the statute of limitations.

That where all the facts necessary for a complete judgment upon the rights of a party are before the appellate court, and relief upon such facts has been denied him in the trial court solely upon a question of law erroneously decided in the trial court, the appellate court will not send the case back for a new trial, but will grant the proper judgment.

APPEAL by the plaintiff Hiram Wood from a judgment, entered in the Monroe county clerk's office on the 14th day of April, 1890, dismissing his complaint, with costs, after a trial by the court at an Equity Term in Monroe county.

*James C. Smith* and *John Van Voorhis,* for the appellant.

*Theodore Bacon,* for the respondents.

MACOMBER, J.:

This action is brought to obtain an accounting of the rents and profits of certain real estate in the hands of the defendant, and for redemption of the land from an instrument which is claimed by the plaintiff to be a mortgage. The real estate involved consists of a lot on Fitzhugh street in the city of Rochester, with a sixty-six feet frontage, containing altogether about one-fourth of an acre. By an instrument dated January 9, 1872, the plaintiff conveyed this land to the defendant, Benjamin M. Baker, for the consideration, as expressed in the deed, of the sum of $12,000. The conveyance was made subject to a mortgage of $20,000, executed December 9, 1871, by Wood to the Mutual Life Insurance Company of New York. By a paper dated the same day as the deed the defendant, Benjamin M. Baker, for the consideration of the rents and covenants expressed in the lease, let and demised to the plaintiff these premises for the term of one year, at the sum of $1,200, with the privilege to the lessee of purchasing the same at any time within six months from the date of the lease, upon payment of the sum of $12,000. The deed contained no assumption, personally, on the part of Baker, of the payment of the mortgage to the Mutual Life Insurance Company. By the terms of the lease the plaintiff was required to pay the interest upon the mortgage to maintain the premises in good repair, to insure the same in the sum of $15,000 for the benefit of the Mutual Life Insurance Company, and $5,000, for the benefit of the defendant, Benjamin M. Baker. This lease also contained the usual covenant of payment of the rent, and of the restoration of the premises one year thereafter. On the 13th day of January, 1873, a like lease was executed to the plaintiff by the defendant Benjamin M. Baker, at the rent of $2,000 per year, with the like privilege of purchasing the same at any time within six months, upon the payment of the sum of $20,000, with the same covenants contained in the first lease above mentioned.

It is asserted in the complaint, admitted by the answer, and found by the learned trial judge, that when the deed was given by Wood to the defendant Benjamin M. Baker, and the first lease taken back, there had been advanced by Baker to the plaintiff the sum of $12,000. It is further alleged in the complaint and admitted in the answer, and likewise found by the trial-judge, that when the second

lease was given the sum of the advancements made by Baker to the plaintiff had, with the year's rent accruing, amounted to $20,000.

Up to July, 1870, this property had been occupied as a livery stable, and conducted first by the defendant Benjamin M. Baker, who was then the owner, and, subsequently, upon a sale of the real estate to Wood, the same was conducted by the plaintiff in his own behalf. On the 5th day of July, 1870, the livery stable building was destroyed by fire. At this time it was contemplated by Wood to erect a substantial building in the place of the old one to be used for hotel purposes. On consultation with Mr. Baker it is alleged in the complaint, and testified to by Wood, that Baker agreed to advance to Wood sufficient moneys to carry out this plan. This fact, however, is disputed by Baker; and whether it is true or not, the allegation and the proof do not form very essential parts of the legal question presented for review on this appeal, though the trial court has found in favor of the plaintiff on that matter as a fact of some importance.

It is established by the evidence of the plaintiff, together with many attending corroborating circumstances, that the instrument executed by Wood to Baker on the 9th day of January, 1872, which was, in form, an absolute deed, was intended by both parties thereto to be a security for the moneys that had been at that time advanced by Baker for the benefit of Wood, namely, the sum of $12,000. This fact is denied by Baker in his testimony, and the latter insists that he declined to loan the plaintiff any money upon the strength of the execution of a mere security upon the property, but offered to purchase the property and pay Wood therefor a sum which, in addition to the sums advanced, would come to $12,000. He testifies that he agreed to assume the payment of the twenty thousand dollar-mortgage to the Mutual Life Insurance Company, though, as stated above, no such assumption on his part is contained in the deed or elsewhere in writing. Wood testifies, with much circumstance and detail, that Baker was desirous to receive ten per cent as interest for the moneys which he had loaned, and that, accordingly, the rental sum in the first lease above mentioned was fixed at $1,200, which would be ten per cent upon the indebtedness then existing; and the rent of the second lease, fixed at $2,000, which would be ten per cent of the amount of the indebtedness at that time existing. The plaintiff, on the 1st·day of November, 1874, being seriously

ill, and unable longer to carry on the hotel business, surrendered voluntarily to the defendant, Benjamin M. Baker, the possession of the premises. Immediately thereupon proceedings by the creditors of the plaintiff were instituted in bankruptcy, which resulted in the adjudication of his bankruptcy on the 11th day of November, 1874, and the appointment, in the month following, of an assignee, together with the usual assignment made by the register in bankruptcy of all of the property of the bankrupt for distribution among creditors. In the succeeding month of May a dividend of fourteen and one-half per cent was declared upon the indebtedness of the bankrupt, and upon the payment of this sum the assignee and the bankrupt both were (as is conclusively presumed in the absence of evidence to the contrary, on notice to all of the creditors) discharged in pursuance of the provisions of the bankrupt law.

The case is devoid of any evidence to show that the assignee in bankruptcy ever made the claim that is now made by the plaintiff in his own behalf, or that he ever received any information which would lead him to believe that the estate, which he officially represented under the appointment, embraced any claim of right of redemption under the deed of January 9, 1872.

There are other facts disclosed by the evidence and which are, in the main, found in the decision of the learned trial judge, but it is not thought to be necessary to refer to them in detail, as they do not have any immediate bearing upon the solution of the questions involved in this appeal.

The learned justice at the trial, while finding all the material facts in favor of the contention made on behalf of the plaintiff, has directed a judgment to be entered in favor of the defendant of a dismissal of the complaint upon the sole ground that the rights claimed in this action passed to the assignee in bankruptcy, and that they had never been restored to the plaintiff otherwise than by the discharge of the bankrupt and his assignee, and that, consequently, this action cannot be maintained. Undoubtedly the object of the bankrupt law was to secure a just and equitable distribution of the bankrupt's property, and the whole of the same, among his creditors; and to this end it was provided that all of the bankrupt's estate, with certain exceptions unimportant in this case, including all his rights of action for property, and all the rights of the redemption of such

property, should be transferred by assignment to his duly appointed assignee. (U. S. Revised Statutes, § 5044, 5045, 5046.) But the question immediately arises, what becomes of the property, whether it be tangible or otherwise, which the bankruptcy court and its assignee declined to consider or failed to use as assets? Is it the property of nobody, or does it necessarily, by operation of law, revert to the bankrupt? The title to it must rest somewhere, and there is a conclusive presumption that it remains where originally found until it is shown to have been taken away in fact as well as in theory.

It will be observed, and too much stress cannot be placed upon the fact, that no fraudulent concealment of any of his property or rights of action is alleged in the answer against the plaintiff. A long perusal of the evidence has led likewise to the conclusion, that if such defense had been interposed it would have been unavailing. There is absolutely no fraud imputed to the plaintiff in the part which he played in the bankruptcy court, though it is plain to be seen that his mind was overlaid and his actions controlled to a great extent by the domination of Mr. Baker. Had any fraudulent concealment been alleged and proved, an entirely different application of the principle enunciated would be administered, for fraud vitiates everything.

Suppose that the plaintiff's claim, as made in this case, had been based not upon a mere right of action, but upon the fact of the existence of some tangible property, like bonds, which had been pledged for the payment of an indebtedness, and this property had been overlooked by the bankruptcy court and its assignee, or, if not overlooked, had been thought to have been pledged for a sum greater than its intrinsic value, and, consequently, the court had refused to treat it as assets, and had administered the estate accordingly, and both the bankrupt and the assignee had been duly discharged, which must necessarily have been under notice to all creditors, could it reasonably be said that the pledgee of such property, after the payment of his debts, might hold it, because, under the bankruptcy proceedings, it might and probably should have been applied to the payment of the indebtedness of the bankrupt, either by judicial proceedings to redeem on payment of the debt, or by a sale thereof under an order of the court? We think not. Can the case of the plaintiff be less strong simply because his claim is based upon a mere right of action, not evidenced by any instrument in writing, but

which is secured to him by well established and undisputed principles of equity jurisprudence, namely, the right to go behind the mere form of the instrument by which his property was conveyed to his creditor, and to say that that instrument, in terms an absolute deed, was intended only as security for the payment of the debt? The discharge of the bankrupt from his debts, accompanied by the discharge of the assignee from further duties in the premises, made a case where it must be conclusively presumed that the bankruptcy court determined that the claim which existed in behalf of Wood against Baker was not assets, or, at least, that it was such an onerous right of action involving in its pursuit an advancement of so large a sum of money to the insurance company that it was not worth anything. (*Nash* v. *Simpson*, 78 Me., 143; *Amory* v. *Lawrence*, 3 Clifford, 523.)

We know of no right existing in this court to say that the bankruptcy court made a mistake. There was yielded to the Federal court, under the act of 1867, the absolute control of the bankrupt's property for the payment of his debts. If that tribunal through accident, mistake or design saw fit not to regard the claim now in suit as assets, we have no power to revise that determination and say that it was assets and that the bankrupt shall now have no title thereto because it should have been distributed in that court. (*Boyd* v. *Olvey*, 82 Ind., 294.)

We think no reconveyance of this right of action was required to be made by the assignee in order to clothe the plaintiff with any property rights therein which the bankruptcy court refused or failed to receive as assets. (*Colie* v. *Jamison*, 4 Hun, 284; *Dewey* v. *Moyer*, 72 N. Y., 79; affirmed by the U. S. Supreme Court in *Moyer* v. *Dewey*, 103 U. S., 301; *Amory* v. *Lawrence*, 3 Clif., 523.)

We are unable to see how the defendant can be heard to object to the prosecution of this claim by the plaintiff rather than by the assignee in bankruptcy. The latter was discharged in the year following his appointment, and the bankrupt himself relieved from any obligation further to pay his debts by the judgment of a competent court. The bankrupt had applied all his property which the court would take to the payment of his debts without any fraudulent concealment of any part thereof. There is no conflict of interest between the assignee in bankruptcy and the plaintiff, and consequently the defendant is not in any proper attitude to object to

being called upon to perform his honest obligation in this action. (*King* v. *Remington*, 36 Minn., 15; *Starkweather* v. *Cleveland Ins. Co.*, 2 Abb. U. S. Rep., 67.)

The cases cited by the learned judge at the Special Term (*Van Slyke* v. *Shryer*, 98 Ind., 126; *Jones* v. *Dexter*, 125 Mass., 469; *Kenyon* v. *Wrisley*, 147 Mass., 476; and *Smith* v. *Chandler*, 3 Gray, 392), do not, in our judgment, vary in any material respect, as applicable to this case, the principle above enunciated. Why should not the plaintiff be permitted to maintain this action under these circumstances? The Federal court having presumably repudiated this claim as an asset, nobody can complain of the action of the plaintiff in availing himself of the right to prosecute it except, possibly, those persons who might share in the distribution of the avails of this action, should the plaintiff ultimately prevail therein. The logical and necessary result of the discharge of the assignee in bankruptcy, and of the bankrupt himself, was to repossess the plaintiff of all property rights which the District Court of the United States refused to regard as assets. Undoubtedly, the creditors, had they moved opportunely, might have instituted an action, even though the assignee had refused to, in order to establish the claim now made. The most, in our judgment, which may be said against the plaintiff is that, by a mistake or accident, the claim which now appears to be so valuable was overlooked by the District Court in its administration of the bankruptcy case. In the absence of allegations and proof of fraud, the utmost that may be claimed against the plaintiff's rights would be found in the principle of equity that he had, by the facts disclosed, become an involuntary trustee of the property for the benefit of the persons who otherwise would have received it (*Seagrave* v. *Kirwan*, Beatty, 157); and that he should in turn apply the property, or the proceeds of the action thus instituted, to the discharge of his debts; but that principle does not prevent him from maintaining this action.

In our view, it is not necessary, perhaps, to show that any right of action based upon this claim must have been enforced within two years by the assignee in bankruptcy, for any rights of such assignee, or any person in his place, seem to have been absolutely abandoned. The question, therefore, whether the plaintiff in his attempt to maintain this action is in better position by reason of the lapse of the

two years mentioned in the Federal Statute (U. S. Rev. Stats., § 5057), does not seem to be of much importance.

The point made in regard to the failure of the answer to set up such two years' limitation does not appear to be, under the proofs and under the findings of the learned trial judge, of any moment in enabling us to arrive at what we deem to be a proper conclusion. This action is timely brought within section 379 of the Code of Civil Procedure, which provides that an action to redeem real property from a mortgage, with or without an account of the rents and profits, may be maintained by the mortgagor, or those claiming under him, against the mortgagee in possession, or those claiming under him, within twenty years. The defense, therefore, set up in the answer, that the cause of action stated in the complaint did not accrue to the plaintiff within ten years next preceding the beginning of the action, is not tenable.

The reply of the learned counsel for the respondents to the suggestion made in the brief of the appellant that the two years' statute provided for by the Federal act had not been pleaded, is to the effect, inasmuch as the defendants had alleged that a thing did not happen within ten years, that such allegation was sufficient to show that it did not happen within two years. This, undoubtedly, would be correct as a matter of time, but in pleading the statute of limitations it is quite obvious that the greater number of years pleaded does not include a lesser number; for section 413 of the Code of Civil Procedure provides: " The objection that the action was not commenced within the time limited can be taken only by answer." It is the limitation of time which is required to be pleaded, and not the time itself.

The only other question remaining is whether, under the expression of these views, it is our duty to grant a new trial, or whether we should direct what seems to us to be the proper judgment following the findings of the trial judge. In the case of *Wood, Supervisor, etc.,* v. *The Board of Supervisors of Monroe County* (30 N. Y. State Rep., 706), we increased the amount of the recovery by a considerable sum of money which had been thrown out by the Special Term, but which had been included in the findings of fact. This conclusion, which was reached after some consideration of section 1317 of the Code of Civil Procedure, which we thought

warranted it, and the cases cited in the opinion then rendered, was affirmed by the Court of Appeals in that case. On this appeal all of the facts necessary for a complete judgment in favor of the plaintiff's contention are found in his favor, and relief is denied him solely upon the ground above stated, namely, that he had not become repossessed of the right of action, otherwise than by a discharge of the assignee in bankruptcy, and his own discharge from all liability to his creditors. If these findings of fact of the Special Term are correct, the proper judgment would be substantially for an accounting of the rents and profits of the real estate, and for a redemption of the title thereof, upon the ground that the instrument conveying the property to the defendant was, though in form a deed, in fact, a security for the payment of an indebtedness, and that, consequently, the defendant, from the time he took possession in the year 1874, was a trustee for the due application of the rents and profits to the extinguishment of the debt which was owing to him by the plaintiff.

But it is claimed by the learned counsel for the defendant, that though the judgment appealed from may not be sustained upon the legal ground mentioned by the learned trial justice, yet that it may be affirmed upon the ground that the learned justice was in error in his conclusion of facts. If this contention is borne out by the evidence, it undoubtedly would lead to the conclusion reached by the learned counsel. Upon an examination of the testimony, we are satisfied that the conclusions in respect to the facts are sustained by a clear preponderance of the evidence. To quote the testimony of the principal witnesses, namely, the plaintiff and the defendant Benjamin M. Baker, would be a prolongation of this opinion beyond all ordinary limits. There are, however, two overwhelming considerations which show that the contention made by the plaintiff upon the question of fact is correct, and these are: First. That after the figuring up and ascertainment of the indebtedness of $12,000, the rental value of the premises was fixed at the sum of $1,200 per year, being ten per cent upon the indebtedness, that being the measure of rent reserved according to the testimony of Wood; and that when such indebtedness became $20,000, such rent reserved was the sum of $2,000, neither sum, under the evidence,

being near the actual rental value of the premises; and, second, if the defendant's claim of an absolute conveyance, with a conditional agreement of sale, is correct, the rights of the parties became fixed six months after the delivery of· the deed, to wit, in the month of July, 1872, and that thereafter the plaintiff had no right, if the arrangement was a mere conditional agreement to sell back the property, to call upon the defendant to make good his promise which was contained in the lease given of even date with the deed. This being so, according to the contention of the defendants, the subsequent loans which, with the year's unpaid rent, amounted to $8,000, were mere gratuities made by the defendant Benjamin M. Baker to the plaintiff absolutely without security, but as acts of generosity. There is, however, nothing in the printed record which would show that this defendant, having once made the bargain which he claims to have made, was a person disposed to give up any of the advantages of that bargain and to bestow upon another, with whom he was claiming to be dealing at arm's end, a mere gratuity.

We think, therefore, that the judgment appealed from should be reversed, and in its place an interlocutory judgment should· be entered declaring that the deed of January 9, 1872, was executed and delivered as a security for the loan of money, and that the plaintiff is entitled to an accounting of the rents and profits during the time that the same has been in the possession of the defendant Benjamin M. Baker, and an application of such rents and profits to the satisfaction and extinguishment of the indebtedness, together with lawful interest thereon, as fixed by statute (*Schermerhorn* v. *Talman*, 14 N. Y., 126, 127); and declaring that Baker was from that time a trustee for the plaintiff, in relation to the premises; and directing that upon payment of any balance due the defendant Baker, if there be any, the latter shall reconvey the property to the plaintiff.

Judgment is so ordered with costs of the trial term and of this appeal to the plaintiff.

Dwight, P. J., concurred.

Judgment appealed from reversed, and an interlocutory judgment directed for the plaintiff, with costs, as indicated in the opinion, upon the findings of fact. Judgment to be settled by justice writing the opinion.